Good morning, Your Honors. May it please the Court, Michael Balaban appearing on behalf of Kurt Skinner. And the reason this appeal was brought is with respect to the issues here, there's clearly issues of fact. And for some reason, almost every case gets dismissed on summary judgment. Here, the issues are clear that Mr. Skinner was always disabled. He always could not lift more than 50 pounds, but he was given help either by coworkers or lifting apparatus. And then he wrote to Mr. Zimmerman, Dennis Zimmerman, to get specific help with pain or whatnot. And he was immediately taken off the job and sent for evaluation and was never allowed to return. Well, counsel, let me tell you what the area of concern to me about your case. When the year of full salary disability benefits ended, the policy provided that those benefits would end after a year. And so the real question is, why wasn't he returned to work at the end of that year? And my concern about the evidence is, has to do with the inconsistency that your client is trying to introduce. Because at the time his benefits ended, he applied for benefits from the state and from Social Security. And in that, on the form it says, Skinner quote, will be able to work as of never. And he claimed that he was 100% disabled. And, you know, there are cases that say you can't sort of create your own contradiction by saying, oh, I really meant something different. So what do we make of that? What weight do we give to those statements? Yeah, I mean, I understand the inconsistency. And that's not unusual in these type of cases. I mean, I'm sure it was cited in my brief, the Cleveland v. Policy Management Systems, whereby the court said that even though there's an inconsistency with the ADA and disability, which is always going to, or most of the time is going to be the case. Because under the ADA, a person can be accommodated in these various disabilities. But you would think if that was true in this case, he would have sought other employment. Because that was, you know, that was consistent with his alleged limitations that he's now talking about. Because most jobs don't require lifting more than 50 pounds. Well, but I don't think an employee is required to do that. I mean, of course he can. I'm not saying he's required to do it. I'm saying that why is it plausible to think that that is an inference that can be drawn here, that that would have been a sufficient accommodation where the person doesn't look for other work that's lighter, but instead says I'm completely disabled and I'm not going to look for work. Well, in fact, in this case, he was. I mean, Mr. Skinner wanted to continue to work at Newmont, and he wanted to just have the accommodations that he had for the 10 years he worked there, i.e., have people be able to help him with lifting, which was only 1 to 5% of the job. And this is provided for in the ADA, alternative job. He would have been happy with the alternative job at Newmont. So what I don't understand is related to what Judge Graber was asking you, though. So Cleveland says that we need to assume the how, in this case, those statements can be reconciled with what he says was his physical condition. Because in other cases, in Cleveland, in a lot of the cases about Cleveland, there was like a temporary disability where the person broke a bone or had a surgery and is recovering. And so there's a disconnect between the current status and what might happen in the future that could maybe explain the difference. Or sometimes the accommodation is needed in any job, and so that's the explanation that, well, I need this accommodation, and that makes the ADA different from Social Security. But here, 50 pounds is such a, and as you're just saying, he could have done a lot of other jobs at Newmont. Well, if he could have done a lot of other jobs at Newmont, why couldn't he work at Walmart or McDonald's or Safeway or somewhere else? And so I don't understand these statements saying I can't work at all. Well, again, for example, in Cleveland, I believe the facts there, Ms. Cleveland, I mean, she, when she applied for Social Security disability, she did say she was totally able, totally disabled, and unable to do any job, I think you say for 12 months, but, I mean, it's not unusual that most of these, to qualify for most of these disabilities, you do have to allege by affidavit usually that you're totally disabled. But the form for the state said, that was filled out, said he would be able to work as of never. And, you know, I just have trouble squaring that with this inconsistent affidavit saying, you know, I'm fully capable of working if I don't have to lift 50 pounds. Well, I mean, if you look at the facts of this case, I mean, Mr. Skinner, when he was taken off the job, he was working. He was expired. There was not, as far as I could tell, there was no medical evidence in the record saying that he could work with or without an accommodation. Yeah, and I Am I right about that? Is there any medical evidence that shows that he could work with or without an accommodation? I mean, I think we addressed that in our brief. This Golden Medical, that Newmont sends all their employees there, and, of course, they are going to But he wasn't limited to that. If he had other evidence, he could have presented it. Am I right that there's no medical evidence saying that he could work with an accommodation as of the end of that 12-month period? Well, yes, but, I mean, the reason he, and I've cited some cases, Smith, Johnson v. State, Oregon, Department of Human Resources, where the same thing has happened. I mean, to get these disabilities benefits, you need to allege or have an affidavit that you're totally disabled. So, I mean, that's why he Let me back up a second here. So, when he applied for the job, he disclosed in Newmont's application form that he could not lift more than 50 pounds, and Newmont still hired him, and he still worked there for nine years. And he has affidavits from coworkers saying, in our job, you never have to lift more than 50 pounds by yourself. You either get the help of a coworker or you get some type of machinery to help you. And there's no allegation that he was not able to successfully perform his job for nine years. So then, when he makes the request for pain medication or some assistance from Mr. Zimmerman, Newmont's own medical doctor, this is not a doctor that's paid for by Mr. Skinner, this is Newmont, the employer's doctor says you can do your job as long as you don't lift more than 50 pounds. And at that point, he goes to Newmont and says, I would like to continue doing my job, but I would like the restriction that your doctor, Newmont, my employer, your doctor said that I could do my job with this limitation, and he was not allowed to go back to work. Why isn't that alone discriminatory and justified denying the, or reversing the summary judgment motion? So the fact that he could have lifted 50... That he was denied a reasonable accommodation at that November 10, 2016 meeting, after he had disclosed the disability, was still hired, performed the job successfully for nine months, Newmont's own doctor said you can do the job as long as they give you this accommodation, and they still wouldn't allow him to do that. Yeah, and we believe that that, they violated the ADA because of that. What were his specific, what was the financial result of that for him? He got full salary on disability benefits for a year, so his damages, if any, begin at the end of that year period, correct? Correct. Yeah, I mean, if he was getting... And if the company really didn't want, have people who couldn't lift 50 pounds, they wouldn't have hired him in the first place, presumably. Yeah, I mean, that's, but I mean, again, they were aware from the start. Right, and they hired him, so they weren't upset about it, presumably, right? Yeah, and again, if they had just continued on with how it was working out... But what was different at the end was that the doctors then said he couldn't work at all. That is what the medical evidence shows, and that's the difference between what happened at the beginning of that year period and what happened at the end. By the end, they were saying he cannot work at all. But the form in which the physician assistant said that he will be able to work as of never also says, advises Mr. Skinner to change occupation, correct? That's at the record at page 74. Okay, yeah, I mean, I'm not disagreeing with that, but again, I mean, this was for him to get these disability benefits. And I agree, there's an inconsistency, but these cases that are cited... So in the cases, they talk about there being an explanation that the plaintiff could give about why the statements can be reconciled. Can you give an explanation here about how the statements can be reconciled? Yeah, the fact that the disability applications don't take into account accommodations. Right, how does that help him though? Because his accommodation is lifting 50 pounds, and are you saying there are no other jobs that don't require lifting 50 pounds? Well, his accommodation would have been to continue to not have to lift 50 pounds without help, and that would have been the accommodation. But in these other cases, they have some idea that without the accommodation, they just can't work at all. And I'm still struggling with, did he have an understanding that every job requires lifting more than 50 pounds? So without an accommodation, he can't work anywhere? That would require lifting more than 50 pounds, correct. Okay, so when he told Social Security that he couldn't work anywhere, had he looked into whether McDonald's requires you to lift 50 pounds? Well, but again, I don't think an employee is required, I mean, that's the whole thing about the ADA, is you're supposed to, it's supposed to allow an employee to continue to be employed by their employer. I don't think he has to look for other jobs. If he had never applied for these disability benefits after the year, I would completely agree with you. I would say he has a great claim. But I'm really struggling with this Cleveland language about him needing to have a good faith belief in the statements he made on these applications. And I'm not understanding yet what the basis for the good faith belief was. Okay, I'm right at two minutes. I did want to reserve a little time at the end. But, I mean, to answer your question, again, I mean, Cleveland makes clear, and that's what happened in Cleveland, where she... was improving afterward and thought, here, he says, I've been the same the whole time. I've never been able, you know, this whole period has been the same. So on that theory, it's not the same as the situation in Cleveland. Well, but, I mean, all I would say is that on the disability applications, you're going to indicate that you're totally disabled. To say that he was going to continue to be totally disabled in real life was probably not going to be the case. So are you basically just saying that it's okay to lie on the disability applications? Well, I wouldn't say to lie, but, I mean, in order to get approved for it. Can I just jump in here? How is this any different than Cleveland and Norris, where they say, I'm totally disabled from doing my job or any other job. I'm totally disabled. And they're all assuming that they could work if reasonable accommodations had been made, but they're making that representation. And that it is in good faith at the time that they could, they would be disabled if they would not get that reasonable accommodation. How is that any different than what happens... That's exactly what our argument is here. And if you look at the doctors of Newmont, all of the medical evaluations here were done by Newmont's doctors. There's no doctor here that was paid for by Mr. Skinner. Even Dr. Ponce and the physician assistant Hastings, when they say he can't perform his work, they say he can't perform his mechanic job duties. They've never given him consideration for any other type of employment at Newmont. They've never said he wouldn't be able to perform any reassigned job that's limited to sedentary work or anything else. Correct? Correct. I think we've taken you over your time, but I'll still give you two minutes for rebuttal. Okay. Thank you, Your Honor. Good morning, Your Honor, so may it please the Court. I'm Anthony Hall, and I have with me Jonathan McGuire, my co-counsel, appearing on behalf of Newmont Mining. I'd like to begin with addressing just a couple of the factual things that I think are important that will go to some of the questions that this bench has been asking. First and foremost, this isn't a Newmont doctor. This is an independent medical facility that is... But it's Newmont's clinic, correct? No, Your Honor. It's a clinic that is in Elko, Nevada, that is owned by someone else. There's no evidence in the record of any kind of ownership or anything else like that. This is simply a contract. But that is the contractor of Newmont, correct? They have a contract for that. It's not the only one. There's multiple medical facilities. There's hospitals. There's all kinds of other facilities. So let me ask you a question. The district court found that Mr. Skinner had not disclosed his disability based on the deposition testimony. But we have ER 49 where he specifically discloses that he had this limitation. So wasn't it an error for the district court to find that this disability was never disclosed? No, Your Honor. Why not? I don't believe that that was the exact finding. And this is a situation where his medical condition changed. Wait. Hang on. That is the finding in the district court's order, right? They quote the defense case, which is the deposition testimony, but don't look at the actual application form. Well, we have de novo reviews. So regardless, did he disclose this condition when he began to work? In his initial application, he disclosed that he had limitations above 50. A 10 percent or 15 percent, something like that. And that's just a percentage rating that doesn't tell us anything about abilities. What he did disclose is above 50 pounds. He has limits. And he can't lift anything over 100. But did you argue to the district court that he never disclosed that limitation? No, Your Honor. I don't believe that was ever an argument. Well, regardless of what the district court arguments or findings were, you are now saying he did disclose it. You knew from the get-go that he couldn't, shouldn't lift or couldn't lift more than 50 pounds without some assistance. With some assistance for that heavier shift. And he was hired anyway. And he had specifically in that same document, he says no restrictions on motion, no restrictions on position, no restrictions for special assignments or things needed. Okay. So fast forward, tell us about what in your view changed. Yes, Your Honor. And that's the whole point. He ended up having an acute system. He went to the doctor, and the doctor referred him to a different physical therapist. The physical therapist was unable to even do the physical examination to figure out exactly what his limits were because he was having, quote, acute symptoms. So there's a fiction that there's this 50 pounds that just stays forever. His condition changed. It was a degenerative condition that did, in fact, change. And that's what all of the medical records say. What about November 1, 2016, when Dr. Black evaluates Skinner? Yes, Your Honor. And finds that he is able to return to work with a Level III restriction of not lifting, pulling, or pushing more than 50 pounds? Yes, Your Honor. And then similarly, what about when the nurse, Janice Owens, evaluates him January 6, 2017, and finds the same thing, that he could return to work with the restrictions Dr. Black has suggested? Yes, Your Honor. What happened there is when they got the initial documentation, they sat down with human resources and a supervisor. They went through the job description and noticed that those limitations were a real problem, especially with the stooping and other limitations. But why would that be a problem if you hired him when he disclosed that limitation and he worked successfully at Newmont for nine years? Then why wouldn't that accommodation have been given on November 10, 2016, or even after the nurse recommends the same limitations in January of 2017? Why wouldn't you have allowed for him to go back to work? Because his condition changed, Your Honor. He, in his own email to Mr. Zimmerman, said, hey, lately I've been having new problems. I need help. His condition changed, and it continued to change and get worse. But I think Judge Koh is asking you whether the doctor in November and the nurse in January were actually describing different limitations than he had said he had when he applied. Your Honor, at the second one, at that point, he was already on an accommodation, and that was the point I was trying to get to. When they sat down with that first limitation, they discussed it, and he agreed to go on disability benefits as a way to get better. And the hope from everybody was that his condition would allow him to get better. I'm sorry. Can you point to something in the November doctor report or the January nurse report that is different than what he said was his limitation when he applied? Your Honor, those work releases when it has the level restriction of the 50 pounds specifically includes checked no pulling, pushing of objects over 50. So he can't manipulate at all. So it's not just lifting is what you're saying. It's pushing, pulling, and maneuvering as well as lifting, and that's what's different. But I wanted to fast forward to even farther to the concern that I have with your position, and that is at the end of the 12 months, was there any effort to place him in an office-type job, a sedentary job that wouldn't require physical labor? Your Honor, they couldn't get that far, and that's where the facts of this are very important, and it also goes to Cleveland. At the end of this employment, when he was receiving full benefits, no adverse employment action, he was on leave with full pay, they gave him an accommodation. He's now second-guessing that, which he doesn't get to do. He had an accommodation. At the end of the employment period, he went in for a medical evaluation. Look at the supplemental excerpt of record 105 to 111. I'm sorry. Are you saying the accommodation was disability leave and not allowing him to work? Yes, Your Honor. He received full pay, and he accepted it. It's a common one. There are so many places in the record where he asked to go back and do his same job with the 50-pound restriction. He would ask, and they would then say, well, let's look at the evaluation. He would get the evaluation and then sign the disability leave. No, he would ask, and Newmont did not respond. There are like eight or nine times, if not more, at a minimum, where he asked to go back to his same job, and Newmont doesn't respond and normally says, oh, well, you know, wait for the next evaluation, wait for the next evaluation, or says nothing and is silent. Repeatedly, repeatedly he asked for his old job back. Your Honor, I would point out that the only period where there was a lack of response was in that three-week period where Mr. Zimmerman was taken off of his case and they replaced him. At that point, they responded and said, let's get the newest information. We want to talk. Going back to the other question that was asked about the end of employment, he is specifically told, your benefits are over. In other words, this excuse that I signed it for my benefits goes away. That benefit is no more. Well, no, that doesn't answer my question. My question is, what, if anything, did Newmont do at that time to offer a completely sedentary job that would fit with no pushing and pulling and stooping and his degenerative condition? Was there anything offered or discussed at that time? Yes, Your Honor. Let me get to that because we have to build the facts about what happened. So his benefits were terminated. He said, hey, I'd like to try and come back. They said, okay, great, take in, go to the doctor, take your job description with you and talk to the doctor. That's at Supplemental Excerpt for Record 105. He does go in to the doctor. He doesn't even bother to bring in his job description. He walks out of the doctor's with two things signed, the Arizona slip and the return to work form, which is Excerpt for Record 104. That is not a disability application form. It is a factual finding by the doctor that says, quote, he's totally unable to perform his job duties. That's not my question still. Okay, keep going. I'm trying to build on that. So they respond and say, hey, is there any additional information you can give us? And his response is, how do I pick up my tools? At that point, the only information they have is that he's totally unable to do his job duties, and he has no limitations that would allow him to do any sedentary job. Let's look at SCR 74. That is what you're relying on for the disability application forms. This is from the physician assistant, Hastings. And if you look, it says the patient will be able to work as of never. That's correct. But then that's question one. Number two is, in your opinion, was it necessary for the patient to B is change occupations, and physician assistant Hastings checks yes. So that is not saying he's not able to work ever. It's saying I recommend that you do something else. You are capable of working. Your Honor, let me try to answer that question by finishing this. And that is the document, that is the Arizona Department of Economic Security form, correct? Yes, Your Honor. That was his application for disability benefits with the state. Yes, Your Honor. So in answering the question, the burden is on the plaintiff to show that there was an available job within those limitations. They have absolutely presented no evidence of that. The few jobs he named, the undisputed record said they either didn't even exist or they were not available. And so there is an evaluation that happened. He presented, in this case, four or five jobs, and the undisputed record says that those were not available. So this process had him totally unable to do his job, and then no jobs were available for which he was qualified. So it sounds like you're saying that he hasn't identified the jobs within Newmont, but wouldn't it be Newmont's responsibility in a dialogue about accommodation to talk about what jobs are available? I don't understand how this disconnect happened that there seems to have been no discussion about an office job. Your Honor, that didn't end up in the record because that wasn't an issue raised by the defendant and their opposition. The bottom line here is he was totally unable to perform his job duties, and when they asked for more information about anything else, which is his obligation to participate in the interactive process and say, hey, look, I can do other things. Well, but part of the interactive process is to take someone like that, and if he has the skills, which we don't really know one way or the other, to say, well, you know, you could be an office worker filling out order forms or something, but isn't that also part of the employer's responsibility? It can be, and in this case there were no available jobs. That's the record. Where in the record does it say that? The record establishes that all the available jobs are jobs he attempted to find. He identified those. Where in the record does it show that? Your Honor, the alternative job discussion is specifically supplemental excerpt to Record 56 as well as 68 through 73, where he admits he has no evidence of additional jobs that would have been available or alternatives that he was able to apply to do. And that's where it ends. Let's go to the retaliation claim. The district court read the complaint, paragraph 14 specifically, and said that Mr. Skinner alleged that he was in violation of Newmont's medical leave policy. But, number one, that didn't appear to consider paragraphs 10 through 13, which clearly say that Mr. Skinner believed he could return to work with the reasonable accommodation of the 50 pounds restrictions and that it was because a defendant's refusal to accommodate that request that he was terminated. On a motion to dismiss, aren't you supposed to draw all inferences in favor of the non-moving party here? Your Honor, yes. You are, correct? And then also the motion to dismiss was also granted because the district court found that the complaint did not allege the dates in which Newmont failed to accommodate Mr. Skinner's request for accommodations. Would you agree that that is something that leave to amend should have been granted? It's not futile. That is something that should have or would have been in Mr. Skinner's possession. He would have been able to allege those dates. There was only one complaint in this case. Leave to amend was never granted.  I would be happy to, Your Honor. Mr. Skinner did not request leave to amend, nor did he propose any dates that he could. In fact, what he said to the district court was he said, look, court. In his opposition to your motion to dismiss, he says the court would have to grant or would have to consider leave to amend if dismissal is granted, and he cited all the factors for granting leave to amend. And you argued in reply against leave to amend. So clearly you understood that it had been raised. Otherwise, you wouldn't have argued it in the reply in support of your motion to dismiss. But you need to provide facts which could form a sufficient basis and tell the court that it wouldn't be futile. Instead of doing that and saying, hey, court, I could do that, his response was, quote, it could have theoretically happened. And that's at the opposition at page 12, lines 27 to 3131. He didn't even propose to the court, hey, it could happen. It left the district court in the absolutely untenable position of having to invent a date that would satisfy the but-for causation. And that's an important element here, Your Honor. He needed to propose a date. So you're saying it would have been legally, factually futile to give one leave to amend. In this particular case, yes, because his own facts pled that he was terminated. If you cite me a case where a court has held, unless you allege everything in your opposition to motion to dismiss that you would include in any amended complaint, we will find futility and deny leave to amend. Cite me any case where that's the case. As a former district judge having been in the other end of the situation, I actually beg to differ. I do not think there's any case that says that unless a plaintiff alleges every single fact that they would include in any amendment, then we find futility. Unless it's already laid out. Unless they, what, attach an amended complaint to their opposition to the motion to dismiss to show how unfutile it would be? Your Honor, we're not asking to allege all these facts. We're dealing with a very limited issue of facts. All right, but cite me a case that says that unless you allege the fact in your opposition to the motion to dismiss, we must find futility. Your Honor, he did not make a motion to amend. He raised the possible issue in his opposition while contradicting himself with the factual allegation and the argument that it theoretically is possible. That's really important, especially in light of Bostock. Bostock gave us the standard of but-for causation. But-for causation requires the court to agree. And are you, by the contradiction, do you mean paragraph 14? Or what are you referring to? No, I'm referring to the contradiction of continuing. What he's saying is, hey, it continued and could happen. It's theoretically possible. That's not a fact sufficient. Wait, what could, the district court dismissed because it said that Mr. Skinner did not identify the dates of the failures to accommodate. So I'm a little bit, I'll find that language specifically if that would be helpful. I'm a little bit unclear on what your position is. That's exactly what I'm speaking to. The Bostock standard says that for the third element that he has to allege, causation, the causation test is but-for. The only thing he alleged to establish but-for causation is this word continuing. Continuing is not enough. You can't change the fact of continuing and all of a sudden have causation. Okay, so this is what it says. It says, Skinner only indicated that he continued to ask for accommodations in the time between filing his charge and his termination, but he did not include any specific dates in which Newmont USA refused to accommodate. So are you saying it would have been futile to give Mr. Skinner a one opportunity to identify, I guess it's a second opportunity since he did file a complaint, to identify the dates on which he asked for accommodation and the dates on which Newmont refused to accommodate? Yes, I believe it would have. In this case, especially with the facts as we know them, he acknowledges that he was terminated because he turned in a return to work form that is the factual finding that he was unable to perform the duties of his job, and that's not retaliatory, and he's admitted that. So it is futile. Had the court let it, we would still be in the same place. There's no retaliatory facts. He's in a worse case because he said, I just said the word continuing, and that's not sufficient under Vostok, under any of the other cases. Anyway, go ahead. I don't understand the continuing. He continued to ask for accommodations. He could have clearly provided the dates on which he requested accommodations. Yes, Your Honor, and he chose not to. No, he wasn't given the opportunity to amend his complaint to provide those dates. Your Honor, he didn't make the motion. The court ruling, I believe, should stand on that basis. Over time, I can answer any further questions. I think let's go to rebuttal from your opposing counsel. Thank you. Thank you, Your Honors. Yes, Your Honors, just quickly on the rebuttal, and I think Your Honors brought out a lot of it, with respect to the alternative jobs or trying to find an alternative job. They did nothing in trying to, I mean, the record is blank as far as them trying to reach out to Mr. Skinner to find alternative jobs, and the cases are clear that the employer is supposed to be more up to stuff on, you know, it's their employment. They know what alternative jobs they might have. So did you ask for discovery on what other jobs existed in the company? Yeah, we did, as a matter of fact. On some of the discovery, we asked what alternative jobs. We didn't really get any response to it, but we did ask. Are you saying that the discovery, there was no response, or you got a response that wasn't helpful? There was a response, but it didn't really name any alternative jobs. Well, did it say there weren't any? That was, you know, opposing counsel said that there were no available alternative jobs. Is that what the response said as well? I don't recall. I know that they didn't give any alternative jobs, because we would have explored that. Right, but they're saying it was your burden to point to some job that he could have done, and usually you get that information by asking for discovery in the discovery process. So I'm kind of baffled a little bit by why there wasn't discussion of this and what happened in discovery. Well, I mean, in our complaint, we did point to some alternative jobs, but their position are those that are available. Because they were not available at the time. Or they didn't exist. Or they said he wasn't qualified, I think is what counsel said. They existed, but he wasn't qualified for them. Is that right? Correct, yeah. But, again, they didn't even reach out to my client to try to explain. Do you have facts that show that those explanations are not correct or questionable? That is, were there available existing jobs for which your client was, in fact, qualified at the time that 12-month period ended at Newmont? I would respond to that. I mean, they're the employer. We can't. You asked for discovery on this question, and you got a response that apparently you got some kind of response. Is there any evidence that you were unsatisfied with that response and asked for, you know, sanctions or more discovery or something? Or is there any evidence that there was any existing Newmont job that was available and for which your client was, in fact, qualified? Again, because it was their internal jobs, we were not in a position to know on that. And on the discovery, again, I know they didn't respond with any alternative jobs. Their position has always been there was no alternative jobs. That never changed. Well, that could be factually correct, could it not? Well, but again, they didn't even explain. I'm asking you a specific question. Is it possible that there were no available existing jobs for which he was qualified? Is that a factual possibility? Yes, it is possible. Okay, so unless that was a false response. No, it's possible, but again, they didn't even explore it, and so I don't know how they could come to that conclusion. But, I mean, usually you would take a deposition and you would say show me the list of jobs of this company. Let's talk about what the duties are of these jobs, what is required physically to do these jobs, and you'd figure out if they were telling the truth. But it doesn't sound like that happened. No, when I deposed Mr. Zimmerman, Dennis Zimmerman, I did get into that a little, and he did talk about it a little, but he wasn't specific about any things, but I did. I did with him. I got into what alternative jobs he might be able to do and whatnot. So I did question him on that. And you were satisfied? I am still confused about then the resolution. Did you think there were other jobs, or did you think he was telling you that there were no other jobs and he was correct? Well, in my experience with employers, because I've done these cases for a long time, is they always, they were always on depositions. They won't be specific about things, and it's hard to tie them down on stuff, but I did ask Mr. Zimmerman about that in the deposition. But, I mean, bottom line, I think one of your honors said it, there's an interactive process. They didn't even approach the interactive process on the alternative job. I mean, they could have interacted with my client on it, and they chose not to. So I think from the get-go, they fail on the alternative jobs. They just didn't look at it. Okay. I think we've taken you over your time. Thank you both guys for the couple arguments. This case is submitted.
judges: GRABER, FRIEDLAND, KOH